IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LAURA HELEN BENNETT | ) | |
| | ) | |
| v. | ) | No. 2:12-0058 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|     Acting Commissioner of | ) | |
|     Social Security | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned for all further proceedings, pursuant to the consent of the parties and the order of the District Judge (Docket Entry No. 27). Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16),[1] to which Defendant has filed a response (Docket Entry No. 22).

For the reasons stated herein, the Court REVERSES the decision of the Commissioner and REMANDS this case for further administrative proceedings.

---

[1] Plaintiff initially filed a motion for summary judgment, which was subsequently re-labeled as a motion for judgment on the administrative record.

## I. INTRODUCTION

Plaintiff protectively filed for a period of disability, DIB, and SSI in January of 2009. *See* Transcript of the Administrative Record (Docket Entry No. 14),[2] at 11, 52-53. She alleged a disability onset date of March 30, 2008, AR 52-53, but later amended this date to March 31, 2008. AR 28. Plaintiff asserted that she was unable to work because of narcolepsy, agoraphobia, social anxiety, and post-traumatic stress disorder ("PTSD"). AR 60.

Plaintiff's applications were denied initially and upon reconsideration. AR 52-55. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with a representative and testified at a hearing before ALJ Jack B. Williams on August 25, 2010. AR 26. On September 24, 2010, the ALJ denied the claim. AR 8. On May 1, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR 1-3, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on September 24, 2010. AR 8. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s). All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s), where appropriate.

2. The claimant has not engaged in substantial gainful activity since March 31, 2008, the amended alleged onset (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: narcolepsy; agoraphobia, anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.902(d), 416.925 and 416.926).

***

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of work at all exertional levels. She could relate socially if not in crowds or around strangers and she has no cognitive limits. She should avoid hazards. In addition, she could understand and carry out simple to detailed tasks but not complex tasks but she could adapt at that level with some difficulty. She could not deal with the public or highly skilled or complicated tasks.

***

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

***

7. The claimant was born on August 6, 1968 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.964).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).

***

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 13-21.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a),

(c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, extertional and nonextertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate

circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluation process is appropriate in some circumstances).

**C. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. AR 20. At step five, the ALJ found that Plaintiff's residual functional capacity ("RFC") allowed her to perform a full range of work at all extertional levels, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the regional and national economy that Plaintiff can perform. AR 20-21.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred in the following ways: (1) he failed to indicate the weight given to the opinions of the consultative psychological examiner and consulting psychiatrist; (2) he failed to include any limitation in the RFC for Plaintiff's narcolepsy; and (3) he failed to indicate the weight given to treating physicians's opinion. (Docket Entry No. 17 at 2). Plaintiff therefore requests that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g). *Id.* at 14.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

### 1. Whether the ALJ erred by not articulating the weight given to the opinions of the consultative psychological examiner and consulting psychiatrist.

Plaintiff contends that the ALJ failed to identify the weight he afforded the opinions of Jerell Killian, M.S., psychological examiner, and Dr. Brad Williams, a consulting psychiatrist, both of whom were retained by Defendant to evaluate Plaintiff's condition. Plaintiff relies on 20 C.F.R.

§ 404.1527(c), which states that the ALJ "will evaluate every medical opinion" received. Plaintiff contends that the opinions of Mr. Killian and Dr. Williams at least "confirm the impairments described in the treating psychological source statement" provided by Dr. Carole Lovell, and at most "establish a significant limitation of concentration and task persistence not addressed in the ALJ's RFC." DE 17 at 8.

Defendant correctly argues in response that the ALJ is not required to explicitly provide the weight given to physicians who are not treating sources. Defendant points to the Sixth Circuit's decision in *Kornecky*, in which the subject claimant similarly argued that an ALJ's failure to articulate his reasons for rejecting a non-treating psychiatrist represented reversible error. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). The Sixth Circuit rejected this argument, stating that the ALJ had neither misstated nor ignored the opinion of the non-treating psychiatrist, but had "merely failed to explain why he favored several examining physicians' opinions over another's." *Id*. The Sixth Circuit held that such a failure was harmless error, and that "[n]o purpose would be served by remanding for the ALJ to explicitly address the shortcomings of [the non-treating psychiatrist's] opinion and the evidence and methods underlying it." *Id*. The Sixth Circuit also noted that while it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that an ALJ can consider all of the evidence in the record without directly addressing in his written decision every piece of evidence submitted by a party. *Id*. at 507-08 (internal citation omitted).

Despite the foregoing, the Court agrees with Plaintiff that the ALJ's failure to address the weight given to the opinions of Mr. Killian and Dr. Williams necessitates remand in this case. As Defendant notes, the ALJ discussed the findings of Mr. Killian and Dr. Williams in his opinion. AR 18-19. The

ALJ also incorporated some of the limitations recommended by Mr. Killian and Dr. Williams into the assigned RFC, but ignored other relevant findings without explanation. Mr. Killian found that Plaintiff can "relate socially so long as she is not forced into situations with too many people or with individuals she does not know," and determined that Plaintiff has no cognitive limitations. AR 255. This was included in the RFC, AR 14, which indicates that Mr. Killian's opinion was afforded some weight. However, the ALJ disregarded other pertinent information from this opinion, which he subsequently used as support to reject the opinion of Plaintiff's treating physician, Dr. Carole Lovell. Specifically, the ALJ noted that Plaintiff "showed no signs of significant distress" during her examination by Mr. Killian.[3] AR 19. However, this excerpt omits an important detail regarding her pre-existing relationship with Mr. Killian:

> [Plaintiff] exhibited no signs of significant distress during this session. However, although I was not aware of her problems, I have known Mrs. Bennett since she was a child *and she stated that she was somewhat comforted when she learned she would be seeing me*.

AR 254 (emphasis added). This is a notable omission, as it suggests that Plaintiff's familiarity with Mr. Killiam at least partially alleviated any social anxiety she may have otherwise experienced by undergoing a psychological evaluation. This is supported by the fact that notwithstanding Plaintiff's lack of "significant distress" during the examination, Mr. Killian nonetheless determined that Plaintiff suffered from agoraphobia that was severe enough to prevent her from further employment. AR 255. Despite this, the ALJ explicitly referenced Plaintiff's lack of significant distress during that examination as support for rejecting Dr. Lovell's opinion. AR 19. The ALJ is not permitted to cherry-pick the record to support his conclusions, but must "consider the evidence taken as a whole." *Davis v. Colvin*,

---

[3] The ALJ referenced this statement twice in his opinion. AR 18-19.

No. 2:10-CV-00088, 2015 WL 3504984, at *6 (M.D. Tenn. May 28, 2015) (citing *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984)).

The ALJ also failed to adequately explain the weight given to Dr. Williams' opinion. Dr. Williams found that Plaintiff "[c]ould understand and carry [out] simple tasks to detailed tasks while getting along with others and adapting at that level of function with some difficulty. Would not be able to perform more complicated tasks nor deal with the public." AR 283. The ALJ clearly incorporated this recommendation into the RFC. AR 14-15. However, in reaching his conclusion, Dr. Williams made the following observation: "[Plaintiff] appears to have [a medically determinable impairment] that could reasonably produce some [symptoms] but [medical records] reflect[] positive response to treatment and coping reasonably well. Mental [component] would appear mild-moderate." AR 279. It is unclear to the Court whether Dr. Williams' confirmation of a medically determinable impairment refers to his diagnosis of narcolepsy, AR 268, or "social anxiety," AR 272, or both of these impairments. It is further unclear what Dr. Williams intended by stating, "mental component would appear mild-moderate," as all of Plaintiff's alleged impairments involve mental components.

Moreover, Dr. Williams' opinion, which was given at least some weight based on the ALJ's incorporation of his functional capacity assessment into the RFC, contains questionable analysis. After writing the word, "capable," Dr. Williams made the following notation: "ADLs drives, some shopping, transports her children, reads, TV, gardens, unsure about concentration, problems with family - generall [sic] credible." AR 279.[4] Dr. Williams listed "drives" as one of Plaintiff's activities of daily living,

---

[4] It is not entirely clear where Dr. Williams' opinion actually begins in this psychiatric assessment. Under the "Consultant's Notes" section of the assessment, Dr. Williams appears to recount the findings from approximately six of Plaintiff's visits with medical providers. He then proceeds to write, "MA- able to relate socially so long as she is not forced into situations with to [sic] many people or those she does not know," AR 279, which is essentially the same assessment

even though Plaintiff has specifically stated that she does not drive unless it is necessary, because of her narcolepsy and social anxiety. AR 31, 156, 255. AR 254. Dr. Williams also lists "transports her children" as a separate activity in support of his conclusion, AR 279, even though this is the same activity of daily living as driving. The Court also notes that activities such as driving, reading, and watching television are "minimal daily functions" that "are not comparable to typical work activities." *Knox v. Colvin*, No. 12-2028-JDT, 2015 WL 1294174, at *3 (W.D. Tenn. March 23, 2015) (citing *Rogers*, 486 F.3d at 248-49).

Additionally, Dr. Williams stated that Plaintiff's medical records "reflect[] positive response to treatment and coping reasonably well." AR 279. While one of Dr. Lovell's notes from December 31, 2008 indicates that Plaintiff was "coping well" on that particular date, AR 215, the records also indicate that Plaintiff's prescribed medication was, at times, either ineffective or caused significant side effects, which included increased anxiety. AR 37-39, 254. On November 22, 2008, Dr. Lovell noted that Plaintiff's Wellbutrin prescription was causing anger issues. AR 216. On May 19, 2009, approximately five months after Plaintiff seemed to be "coping well," Dr. Lovell noted that Plaintiff was becoming *more* anxious. AR 316. On June 12, 2009, over three weeks later, Dr. Lovell noted Plaintiff's frustration with her ongoing agoraphobia. AR 315. On January 10, 2010, her treatment was discontinued after she lost access to insurance, at which point Dr. Lovell noted Plaintiff had only partially met her goal of decreasing her anxiety. AR 314. Plaintiff had not, however, accomplished the goals of decreasing her fear of leaving her home or resolving grief over the death of her father, nor had she increased her coping skills. AR 314. Despite this evidence, including the fact

---

provided by Mr. Killian. AR 255. The Court assumes that Dr. Williams' opinion begins with the word, "capable," which is followed by a subsequent paragraph that includes the aforementioned list of activities of daily living.

that Plaintiff was forced to cease treatment she could no longer afford, the ALJ essentially quoted Dr. Williams' opinion that Plaintiff's medical records "reflect positive response to treatment and she appears to be coping reasonably well," in order to reject Dr. Lovell's opinion. AR 19.

Finally, following his list of Plaintiff's activities of daily living, Dr. Williams ambiguously stated that he is "unsure about concentration." AR 279. The Court is unable to discern the meaning of this statement, although it is noted that Dr. Williams also determined in the same assessment that Plaintiff was only "moderately limited" in her ability to maintain attention and concentration. AR 281. At a minimum, this discrepancy gives the impression that Dr. Williams provided an opinion as to the limitations of Plaintiff's ability to concentrate while simultaneously being "unsure" about this ability. There is no way to ascertain Dr. William's intention behind this statement, however, as no other notes in his report involve Plaintiff's concentration. Nonetheless, his functional capacity assessment states that Plaintiff "[c]ould understand and carry [out] simple tasks to detailed tasks while getting along with others and adapting at that level of function with some difficulty. Would not be able to perform more complicated tasks nor deal with public." AR 283. This is not inconsequential, as the ALJ specifically referenced Dr. Williams' finding that Plaintiff had moderate limitations in maintaining concentration, AR 19, and proceeded to adopt Dr. Williams' opinion as part of the RFC. AR 14-15, 283. The ALJ also used Dr. Williams' opinion as part of his rejection of Dr. Lovell's opinion, which he based partially on the "reports of the treating and examining practitioners and the findings made on examination." AR 19. The Court finds that this incomplete analysis of Dr. Williams' report, as well as the ALJ's failure to acknowledge relevant evidence in Mr. Killian's report pertaining to Plaintiff's stress level, makes remand appropriate in this matter.

It is true that there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Adams v. Comm'r of Soc. Sec.*, No. 4:13-CV-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)). However, while an ALJ "need not discuss every piece of evidence in the record" he also "may not ignore an entire line of evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12-CV-00333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (internal citations omitted). In the instant case, the ALJ ignored substantial evidence regarding Plaintiff's condition that contradicted the findings of Dr. Williams, and disregarded relevant evidence contained in Mr. Killian's opinion. Because the ALJ relied heavily on these two opinions in both discounting the opinion of the treating psychologist and formulating the ascribed RFC, the Court finds that this case should be remanded for additional consideration.

**2. Whether the ALJ improperly failed to include any limitation in the RFC regarding narcolepsy.**

Plaintiff next argues that the ALJ erred by finding that Plaintiff's narcolepsy represented a severe impairment, but failing to include any limitations in the assigned RFC pertaining to narcolepsy. Plaintiff cites SSR 85-15 in asserting that the ALJ is required to provide a "complete and thorough evaluation that addresses 'function-by-function' each and every limitation" caused by a claimant's condition. DE 17 at 10. Plaintiff additionally cites SSR 85-16 to argue that the ALJ must include "all limits on work-related activities resulting from nonexertional impairments" in his RFC. *Id.*

The Court finds this argument unpersuasive. A severe impairment may or may not affect a claimant's functional capacity to do work, but one does not necessarily establish the other. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal citation omitted). Additionally,

and more significantly, Defendant correctly notes that the RFC accounts for narcolepsy by stating that Plaintiff should not be exposed to any hazards. DE 22 at 13; AR 14. Although the ALJ failed to discuss the weight given to any of the physicians or other sources in this case, as discussed *supra*, he clearly incorporated Dr. Allison's recommendation that Plaintiff "should avoid hazards and tasks involving long-distance driving or other operation of heavy machinery *due to narcolepsy*." AR 262 (emphasis added). Plaintiff points to no evidence that supports any additional restrictions due to narcolepsy other than her own testimony. DE 17 at 9. The Court thus rejects Plaintiff's argument.

**3. Whether the ALJ erred by failing to explain the weight given to the opinion of Plaintiff's treating physician.**

Plaintiff lastly argues that the ALJ improperly considered the opinion of Dr. Carole Lovell, Plaintiff's treating psychologist, by failing to identify the weight given to her opinion. Plaintiff does not argue that Dr. Lovell's opinion was entitled to controlling weight, but instead relies on 20 C.F.R. § 404.1527(c)[5] to contend that the "ALJ must explicitly state the weight given to every medical [opinion]." DE 17 at 12.[6]

Defendant correctly notes that Plaintiff's reliance on 20 C.F.R. § 404.1527(c) is misplaced as the ALJ is not necessarily required to specifically state the amount of weight given to an opinion under this regulation. 20 C.F.R. § 404.1527(c)(2) holds that the ALJ will "give good reasons . . . for the

---

[5] Plaintiff misidentifies this regulation as 20 C.F.R. § 404.1527(d).

[6] In fact, Plaintiff states that she "did not argue to the ALJ that Dr. Lovell's opinion should have been given 'controlling weight' under the regulations, and doesn't now. Nor does plaintiff need to assert or prove controlling weight should have been given." DE 17 at 12 (emphasis in original). Despite this, Plaintiff did in fact request that the Appeals Council assign controlling weight to Dr. Lovell's opinion. AR 211.

16

weight we give [the claimant's] treating source's opinion," but it does not require the ALJ to explicitly identify this weight. In this case, the ALJ provided the following reasons for not giving Dr. Lovell's opinion controlling weight:

> The undersigned is aware of Dr. Lovell's markedly limited residual functional capacity assessment. However, the undersigned is not persuaded that this is an accurate representation of the claimant's true abilities . . . Although she suffers from symptoms of fatigue and is diagnosed with narcolepsy, treatment notes reveal she has reported some improvement of her symptoms since she began taking medications. She has had difficulty sleeping at night but wakes up easily in the morning. She gets her children ready for school and transports them to school, does housework but does take naps during the day . . . In terms of the claimant's alleged problems with narcolepsy, the undersigned is not entirely convinced that this is uncontrollable with medications. Her doctors, as opposed to the claimant and her representatives, have not indicated this. Her statements concerning her impairments and their impact on her ability to work are not entirely credible in light of her activities, the degree of medical treatment required, the reports of the treating and examining practitioners and the findings made on examination.

AR 19. Plaintiff does not dispute any of these reasons with reference to medical evidence in the record. Plaintiff's argument is instead, as Defendant claims, a "purely formalistic argument" regarding agency policy. DE 22 at 8.

The Sixth Circuit has held that an ALJ's failure to explicitly indicate the weight given to a treating physician's opinion is harmless error as long as the goal of providing good reasons was met. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006). In this case, however, Plaintiff's argument is well taken in light of the ALJ's failure to explain the weight given to any of the medical providers or examiners, as discussed *supra*, except that Dr. Lovell's opinion was not given controlling weight. AR 19. This is significant because, as previously discussed, the ALJ relied on the opinions of Mr. Killian and Dr. Williams in rejecting Dr. Lovell's assessment, yet in doing so ignored relevant evidence regarding such opinions. The ALJ emphasized Mr. Killian's statement that Plaintiff showed

no signs of significant distress during his examination, AR 18-19, while neglecting Mr. Killian's explanation that she felt more comfortable because of her familiarity with him. AR 254. The ALJ also disregarded evidence that contradicted Dr. Williams' opinion, including records showing that she was not coping reasonably well, and failed to reconcile the lack of clarity in Dr. Williams' opinion regarding Plaintiff's ability to maintain concentration.

Although 20 C.F.R. § 404.1527(c)(2) only requires the ALJ to give "good reasons" for the amount of weight given to a treating source's opinion, SSR 96-2p requires that such reasons be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). In this case, the ALJ stated that he "does not afford Dr. Lovell's opinion controlling weight," AR 19, but failed to indicate how much weight, if any, was given to the opinion. It is therefore unclear whether this determination represents a complete rejection of Dr. Lovell's opinion. Coupled with the ALJ's failure to indicate the amount of weight given to the opinions of Mr. Killian and Dr. Williams, this prevents both the Plaintiff and this Court from having a clear understanding of the weight given to Dr. Lovell's opinion and the reasons for such weight, in violation of SSR 96-2p. *See Reagan v. Colvin*, 47 F. Supp. 3d 648, 663 (E.D. Tenn. 2014); *see also Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012).

[I]naccuracies, incomplete analysis and unresolved conflicts of evidence can serve as a basis for remand. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011). Based on the ALJ's failure to resolve conflicts of evidence, failure to provide a complete analysis with respect to the

opinions of Mr. Killian and Dr. Williams, and failure to identify the weight given to any medical provider, the Court finds that this case should be remanded for additional consideration.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 16) is GRANTED. The Court hereby REVERSES the decision of the Commissioner of Social Security and REMANDS this case for further proceedings consistent with this ruling in regards to the ALJ's analysis of the opinions of Dr. Lovell, Dr. Williams, and Mr. Killian.

An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge